Our final case for argument this morning is Lewis v. Bisignano. Mr. Vanderwerf, if you're having trouble with that, you should proceed. Good morning, Your Honors, and may it please the Court, Attorney Adam Vanderwerf on behalf of the appellant, Mr. John Lewis. In the Social Security setting, an ALJ is required to assess the severity of symptoms and determine whether or not those symptoms reasonably relate to impairments and ability to function in the workplace. That simply wasn't done in this case with respect to Mr. Lewis's obsessive compulsive disorder. As you can see from the language to my left, the judge simply lumps the obsessive compulsive disorder in with all of his other mental health impairments and doesn't determine whether or not that condition by itself arises to impair his ability to function in the workplace. In this case, Mr. Lewis suffers from obsessive compulsive disorder, which has two main symptoms. The first of which is obsessions, which are unwanted, continuous thoughts on a specific subject, and the second is compulsions, actions that the applicant cannot control. In this case, it was noted that Mr. Lewis had three hours a day of these obsessive thoughts, as noted by various treatment providers, and that these obsessions and compulsive behaviors would relate to established legal harm, off-task behavior in an excessive amount. Specifically, the record does not look at the compulsive behavior. It is completely absent from the ALJ's decision. It is noted throughout that he has picking behaviors, that he's pulling on his beard, that he's pulling out his eyelashes. Now, the vocational expert testified that he would be able to perform work as a bagger, which is a person who stands at the end of your grocery line and puts your items in a  bag. What grocery store is going to continue the employment of a person who is working one-handed because his other hand is busy pulling at his beard for an hour, two hours, three hours a day? Similarly, what company, the vocational expert testified that he would be able to do work as a hammer mill operator. Mr. Lewis engaged in obsessive counting of various things. In fact, in one counseling session, he reported that he engaged in obsessive counting and then began counting the ceiling tiles. What employer is going to allow him to sit there and count the number of hammer strokes that's breaking up the metal objects, rather than— Mr. Vanderwerff, you're arguing as if we were the fire-triers of fact, but we aren't. The ALJ made a decision, and the question is whether there is substantial evidence. You should focus on that question. Your Honor, the question is not merely whether or not this case is decided on substantial evidence. There are two ways that a case in Social Security gets remanded. One is substantial evidence. The other is if the ALJ commits harmful legal error. Harmful legal error can be established by failing to consider symptoms associated with a specific disorder, and then if that failure results in a harmful result. In this case, we contend that the harmful result is the off-task behavior opined by several different treating providers, and specifically cited by Dr. King as interfering with the claimant's ability to carry out instructions. Because the judge did not consider these symptoms, that would be the harmful legal error, and we have established the harm through the evaluation of these opinions, inconsistent with this condition. Didn't the ALJ consider whether or consider the ability of the claimant to be able to concentrate on things and to be attentive to, you know, instructions and other matters of that sort? He did, Your Honor, but again, that's not really a function of obsessive compulsive disorder. A person with an obsession has no problem concentrating on their obsession for hours on end. They are, however, off-task because they are not focused on what is required of them at the job. So you don't think that the, when the ALJ was talking about concentration and attention, that the ALJ was focusing on whether a person, whether Mr. Lewis would be able to concentrate and be attentive to the demands of his job? That's not what I said, Your Honor. What I'm saying is that attention and concentration are not a symptom of OCD. They wouldn't be affected by this condition. The fact that Mr. Lewis continues to have normal attention and concentration wouldn't be expected to be affected by this condition. Rather, what would be expected to be affected is his ability to maintain pace, things that would be affected by his use of only one arm, for example, when he's pulling on his beard. This is consistent with the opinion that, or the noted behaviors in the file and things like that. And indeed, the B criteria in Appendix P, subsection 12E, is much broader than attention and concentration. It asks the ALJ to look for examples of behaviors that would impede a person's ability to maintain pace. In this case, because the client would be working one-handed, that is exactly the kind of behavior that would impede a person's ability to maintain pace. So it's not that the judge is wrong to consider attention and concentration, or that he didn't do a sufficient job with that. It's merely not related to the condition at issue. Furthermore, the judge notes that the ruminations are considered allegations. This is an improper inference from the record. This is mostly noted in the treatment notes of Mr. Bordini, who's a licensed clinical social worker. No person with a high school education walks into a counselor's office and goes, I'm stuck, I have these ruminative thoughts. This is clearly a thought process that is translated by a professional to make these observations. This is true evidence, not subjective reports, of Mr. Lewis's obsessive-compulsive disorder. To dismiss it merely as an allegation means that the judge hasn't drawn an accurate logical bridge from the evidence to his conclusion, and therefore, he still hasn't considered properly the appellant's obsessive-compulsive disorder. Furthermore, this opinion that the claimant would be off-task is repeated through multiple opinions. In fact, it's even in the state agency opinion to some extent. The Dr. Arroyo says that the claimant would have a moderate difficulty in sustaining the ability to perform a full work day and work week. This is consistent with the inability to perform tasks because of compulsions, like counting the ceiling tiles, like pulling on his beard. So you can't say that this opinion is mostly consistent, but because he has normal attention and concentration, which wouldn't be indicative of this condition, that I've sufficiently considered it. In fact, we know he hasn't because he didn't determine whether this condition had a specific impact at all. He said, I can paint these conditions in a broad brush and look at them solely through the mental status exams. Unfortunately, that simply doesn't work in mental health cases. If we look at other conditions like post-traumatic stress disorder, hyperreactivity doesn't show up in a mental status exam. Or a person with personality disorders goes through periods of intense attachment to somebody and then withdraws and becomes moody and cancels appointments, breaks relationships with treatment on a person's mood and cooperation with a provider rather than the condition specific analysis. You would say that that condition isn't disabling because you're not looking at the symptoms specific to that disorder. You must do that in order to comply with SSR 16-3P and Social Security's regulations. And as the B criteria clearly lay out in mental health cases, this goes beyond the things found in the mental status exam. Again, the B criteria specifically says that you are looking for examples of the ability to work at appropriate and consistent pace, complete tasks in a timely manner, ignore and avoid distractions while working. If a person is focused on whether or not their hair is turning gray, they're not focused on what they're doing in front of them. That would coincide, again, with these opinions that state he wouldn't be able to maintain this pace. Indeed, several courts in this district have interpreted the ability of trained professionals to relate subjective symptoms into findings that the ALJ should properly consider. We should adopt that finding in this case. We referenced it specifically in our brief in Thoreau. In that case, a counselor noted that the claimant was having panic symptoms, and those weren't directly observed. But again, that's something that is believed and considered something more than subjective. It is not appropriate to simply dismiss it because it wasn't either put in a mental status exam or directly observed. And I'll take the rest of my time as reserved. Thank you, Your Honors. Thank you, Mr. Vanderwerf. Ms. Schacht. May it please the Court. Meredith Schacht on behalf of the Commissioner of Social Security. I guess I will start by just clarifying what the record actually demonstrates. Counsel referred to there being three hours of ruminative or obsessive behaviors noted by various treatment providers. I don't believe that to be the case. There was one report by Mr. Lewis that he spent three hours a day on, you know, sort of obsessive-compulsive-related thought processes. However, in the same report, he said it did not actually interfere that much with his functioning. There was no observation by treatment providers or examining providers that his symptoms interfered with his functioning. There were observations of the symptoms. He did occasionally, you know, pull on his beard or scratch his nose. He would pull out his eyebrows occasionally. But there was no observation that that interrupted other activities. He was noted to have ruminative thoughts. There was no indication that that prevented him from participating in sessions, from completing hours of neuropsychological testing. The representation of the record in Mr. Lewis' brief is simply not accurate. So we would just ask for caution when considering those assertions. 16.3p, the Social Security ruling, 16.3p, and the regulations do not require that the ALJ assign symptoms to any specific impairment. That would be very difficult, probably not workable. What it generally does require is that the ALJ consider all of the symptoms which the ALJ did hear. The ALJ was not required to find obsessive-compulsive disorder to be a severe impairment. This Court has recognized that even if it should have been a severe impairment, any such error would be completely harmless because the ALJ went on to discuss at length the evidence and all of the symptoms. The ALJ considered Mr. Lewis' subjective assertions thoroughly and in compliance with the regulations, and he also appropriately assessed each of the medical opinions, providing well-supported reasons for finding some of them persuasive or partially persuasive and others simply not persuasive. He identified significant issues with several of the opinions. Nobody doubts that Mr. Lewis has limitations. The ALJ acknowledged as much and included significant restrictions in the residual functional capacity to address those limitations, and so we would ask that you affirm the ALJ's decision. Thank you very much. Thanks to both counsel. The case is taken under advisement, and the Court will be in session.